1
2
3
4
5
6
7          IN THE UNITED STATES DISTRICT COURT
8          FOR THE EASTERN DISTRICT OF CALIFORNIA
9
10
11   GARY ROBERSON,
12              Plaintiff,              No. 2:12-cv-2640 AC P
13         vs.
14   QUEEN OF THE VALLEY
     MEDICAL CENTER, et al.
15                                      <u>ORDER</u>
              Defendants.
16   _____/
17              Plaintiff is a state prisoner proceeding pro se.  He seeks relief pursuant to 42
18   U.S.C. § 1983 and has requested authority pursuant to 28 U.S.C. § 1915 to proceed in forma
19   pauperis.  This complaint was docketed in the Northern District of California on August 3, 2012,
20   and transferred to this court on October 25, 2012.  ECF Nos. 1, 6-7.  It was reassigned to the
21   undersigned by order filed on November 19, 2012, pursuant to Local Rule 302 and 28 U.S.C.
22   § 636(b)(1).  ECF No. 9.
23              Plaintiff has submitted a declaration that makes the showing required by 28
24   U.S.C. § 1915(a).  Accordingly, the request to proceed in forma pauperis will be granted.
25              Plaintiff is required to pay the statutory filing fee of $350.00 for this action.  28
26   U.S.C. §§ 1914(a), 1915(b)(1).  By this order, plaintiff will be assessed an initial partial filing fee

1

1  in accordance with the provisions of 28 U.S.C. § 1915(b)(1).  By separate order, the court will

2  direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account

3  and forward it to the Clerk of the Court.  Thereafter, plaintiff will be obligated for monthly

4  payments of twenty percent of the preceding month's income credited to plaintiff's prison trust

5  account.  These payments will be forwarded by the appropriate agency to the Clerk of the Court

6  each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full.  28

7  U.S.C. § 1915(b)(2).

8           The court is required to screen complaints brought by prisoners seeking relief

9  against a governmental entity or officer or employee of a governmental entity.  28 U.S.C.

10  § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised

11  claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may

12  be granted, or that seek monetary relief from a defendant who is immune from such relief.  28

13  U.S.C. § 1915A(b)(1),(2).

14           A claim is legally frivolous when it lacks an arguable basis either in law or in

15  fact.  Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-

16  28 (9th Cir. 1984).  The court may, therefore, dismiss a claim as frivolous where it is based on an

17  indisputably meritless legal theory or where the factual contentions are clearly baseless.

18  Neitzke, 490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however

19  inartfully pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d

20  639, 640 (9th Cir. 1989); Franklin, 745 F.2d at 1227.

21           A complaint must contain more than a "formulaic recitation of the elements of a

22  cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the

23  speculative level."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "The pleading

24  must contain something more...than...a statement of facts that merely creates a suspicion [of] a

25  legally cognizable right of action."  Id., quoting 5 C. Wright & A. Miller, Federal Practice and

26  Procedure 1216, pp. 235-235 (3d ed. 2004).  "[A] complaint must contain sufficient factual

2

1   matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>,

2   556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570, 127 S.Ct. 1955).  "A claim has

3   facial plausibility when the plaintiff pleads factual content that allows the court to draw the

4   reasonable inference that the defendant is liable for the misconduct alleged."  <u>Id.</u>

5           In reviewing a complaint under this standard, the court must accept as true the

6   allegations of the complaint in question, <u>Hospital Bldg. Co. v. Rex Hospital Trustees</u>, 425 U.S.

7   738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all

8   doubts in the plaintiff's favor.  <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421, 89 S.Ct. 1843 (1969).

9                                    **The Complaint**

10          This case arises from the alleged misdiagnosis of plaintiff's medical condition

11   (lupus) and ensuing improper medical treatment, including an unnecessary splenectomy.

12   Plaintiff expressly alleges medical negligence as the basis for his claims.  Complaint (ECF No.

13   1-1) at 12-14.  The negligence allegations are then incorporated into plaintiff's Eighth

14   Amendment causes of action.  Complaint (ECF No. 1-1) at 15-16.  Plaintiff also presents

15   pendent state claims for negligence and medical malpractice.  Complaint (ECF No. 1-1) at 17.

16          Plaintiff names nearly twenty defendants, mostly doctors but also two non-prison

17   health care facilities, the secretary of the CDCR, the State of California and two wardens.

18   Plaintiff alleges that on November 30, 2009, while housed at Folsom State Prison (FSP), he was

19   given a CBC[1] test at the behest of defendant Warden Cardeno, due to unexplained bruising and

20   flu-like symptoms.  Following the test, plaintiff was rushed to the FSP emergency room where

21   he saw defendant Dr. Dunlap, who explained that his platelet count was critically low.  Plaintiff

22   was then taken  on the same day to defendant Doctors Hospital of Manteca (DHM), where he

23   was informed that he had been diagnosed with Idiopathic Thrombocytopenic Purpura (ITP).

24   Plaintiff was provided treatment and several medications for ITP and was released back to FSP

25

26          [1]    CBC is apparently an abbreviation for a complete blood count test.

3

on December 4, 2009.  ECF No. 1-1, pp. 1, 3-7, 32.

Plaintiff returned to DHM on February 25, 2010.  Upon his return to FSP, he was transferred to California Medical Facility-Vacaville (CMF) so his illness could be better monitored.  Plaintiff was transferred by defendants CDCR Secretary Cate, Cardeno, and Dunlap to the care and custody at CMF of defendants CMF Warden Singh, Dr. Bick and Dr. Richman on April 12, 2010.  Defendant Richman became his hematologist.  On April 29, 2010, plaintiff had a bone marrow biopsy and after seeing defendant Richman again, was told he was given an Antinuclear Antibody Test (AAA Test).  On June 2, 2010, plaintiff alleges that the defendants State of California, Cate, Bick and Richman "negligently transferred" him to defendants Queen of the Valley Medical Center (QVMC) and the care of defendant Drs. Umutyan, Loftus, Chough, Adhye, Dugan, Tan, Jensen and Paredes.  ECF No. 1-1, pp. 7-8.

Plaintiff alleges that defendant Richman failed to administer the "aforementioned tests," id. at 8[2], and sent plaintiff out to defendant QVMC for a consultation regarding a possible splenectomy.   When plaintiff explained to the surgeon, defendant Loftus, that he was not there for a splenectomy but only to discuss whether this surgery was his only option, Loftus referred plaintiff to defendant Umutyan, the on-call hematologist.  Defendant Umutyan told plaintiff that a splenectomy was not his only option to treat his ITP condition, and discussed other options involving oral medications and injections.   Plaintiff underwent four cycles of rituximab and his platelet count stayed within the normal range for about four or five months.  Id. at 8-10.

Plaintiff then claims that defendants California, Cate, Bick and Richman "negligently transferred" him, on August 10, 2010, back to defendant QVMC and the care of defendants Umutyan, Loftus, Chough, Adhye, Dugan, Ian, Jensen and Paredes.  After a CBC test, it was determined that plaintiff had relapsed and his platelets had dropped again.  Plaintiff was admitted and defendant Umutyan prescribed once-a-week injections for several months, which

---

[2] This allegation is confusing in light of the allegation that defendant Richman performed the AAA test referenced above.

4

1   were not successful.  After having been admitted to defendant QVMC during this period from six

2   to twelve times, defendant Umutyan told plaintiff his only chance for a cure was a splenectomy.

3   When plaintiff asked if he might not have some other illness, defendant Umutyan assured him

4   that he had ITP.  Defendant Umuytan explained that because of his lower than normal platelet

5   count, plaintiff's surgery would be risky and he might require a platelet transfusion.  Plaintiff,

6   fearful of invasive surgery, asked for another bone marrow biopsy or other test to rule out another

7   illness, and defendant Umutyan told him that would be "fine."  Plaintiff had another bone marrow

8   biopsy on September 12, 2011.  Plaintiff was told that same day that his splenectomy was

9   scheduled for September 25, 2011.  Id. at 10-11.

10          The splenectomy was performed on September 25, 2005 at QVMC without

11   complication, and plaintiff did well for seven days before his platelet count dropped again.  On

12   October 2, 2011, plaintiff was readmitted to defendant QVMC and informed that the operation

13   had not been successful.  Plaintiff was then placed on a pill regimen to treat the ITP.  On October

14   6, 2011, defendant Umutyan told plaintiff that he had performed several tests on September 13,

15   2011, which resulted in a new diagnosis of systemic lupus erythematosus (SLE).  Id. at 11.

16          Plaintiff contends that the splenectomy could have been avoided had defendant

17   Umutyan waited for the test results.  Plaintiff states that defendants QVMC, Umutyan, Chough,

18   Loftus, Adhye, Dugan, Ian, Jensen and Paredes should have but did not wait for the September

19   12, 2011 bone marrow biopsy test results before plaintiff underwent the unnecessary surgery.  Id.

20   at 11-12.

21          To summarize, plaintiff alleges that defendants Drs. Khan, Nguyen

22   and DHM "negligently misdiagnosed" him as having ITP on November 30, 2009, when he

23   actually had SLE.  The misdiagnosis led to unnecessary treatment culminating in the negligent

24   removal of his spleen nearly two years later.  Defendants QVMC, Umutyan, Chough, Loftus,

25   Adhye, Dugan, Ian, Jensen and Paredes were negligent in informing plaintiff that he had ITP and

26   that a splenectomy was the best and only cure.  These defendants were also negligent in

1   scheduling his surgery before the results of the blood tests were in, and were negligent in

2   performing the unnecessary surgery.  Plaintiff also blames these same defendants for unnecessary

3   injections and pill medications he was given.  Plaintiff alleges that defendants California and

4   prison authorities Cate, Cardeno and Dunlap were negligent for referring him to defendants Khan,

5   Nguyen and DHM on November 30, 2009 and for negligently transferring him to CMF and the

6   care of defendants Singh, Bick and Richman on February 25, 2010.  Defendants Richman and

7   Bick were negligent in referring plaintiff to defendants QVMC, Umutyan, Chough, Loftus,

8   Adhye, Dugan, Ian, Jensen and Paredes on June 2, 2010.  Id. at 12-14.

9                              **Screening Pursuant To 28 U.S.C. § 1915A(a)**

10                  This complaint must be dismissed for a number of reasons which are explained

11  below.  Plaintiff will be provided an opportunity to amend.

12                      <u>Claims Against The State Of California</u>

13                   First, as to naming that State of California as a defendant, plaintiff is informed

14  that the Eleventh Amendment serves as a jurisdictional bar to suits brought by private parties

15  against a state or state agency unless the state or the agency consents to such suit.  <u>See</u> <u>Quern v.</u>

16  <u>Jordan</u>, 440 U.S. 332 (1979); <u>Alabama v. Pugh</u>, 438 U.S. 781 (1978)( per curiam); <u>Jackson v.</u>

17  <u>Hayakawa</u>, 682 F.2d 1344, 1349-50 (9th Cir. 1982).  In the instant case, the State of California

18  has not consented to suit.  Accordingly, plaintiff's claims against the state are frivolous and must

19  be dismissed.

20                      <u>Claims Against Supervisory Defendants</u>

21                  Second, defendants Cate, Cardeno, Dunlap and Singh are high-ranking prison

22  officials whose responsibility for the alleged acts of medical malpractice presumably flows from

23  their institutional oversight responsibilities.  The Civil Rights Act under which this action was

24  filed provides as follows:

25                  Every person who, under color of [state law] . . . subjects, or causes
                    to be subjected, any citizen of the United States . . . to the
26                  deprivation of any rights, privileges, or immunities secured by the

                                                6

1    Constitution . . . shall be liable to the party injured in an action at
2    law, suit in equity, or other proper proceeding for redress.

3  42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

4  actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

5  Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

6  (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the

7  meaning of  § 1983, if he does an affirmative act, participates in another's affirmative acts or

8  omits to perform an act which he is legally required to do that causes the deprivation of which

9  complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

10         Supervisory personnel are generally not liable under § 1983 for the actions of their

11  employees under a theory of respondeat superior.  Therefore, when a named defendant holds a

12  supervisorial position, the causal link between him and the claimed constitutional violation must

13  be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v.

14  Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979).  Vague and

15  conclusory allegations concerning the involvement of official personnel in civil rights violations

16  are not sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).  Defendants

17  Cate, Cardeno, Dunlap and Singh are high-ranking prison officials under whose authority plaintiff

18  claims to have been negligently transferred from one prison or hospital facility or another so that

19  he might receive medical treatment.  Because plaintiff pleads no facts causally connecting these

20  defendants' own actions to the alleged constitutional violations, the claims against them must be

21  dismissed.  Plaintiff will be granted leave to amend.

22         Elements Of An Eighth Amendment Violation

23         Third, in order to state a § 1983 claim for violation of the Eighth Amendment

24  based on inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to

25  evidence deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106,

26  (1976).  To prevail, plaintiff must show both that his medical needs were objectively serious, and

1  that defendants possessed a sufficiently culpable state of mind.  <u>Wilson v. Seiter</u>, 501 U.S. 294,

2  299 (1991); <u>McKinney v. Anderson</u>, 959 F.2d 853 (9th Cir. 1992) (on remand).  The requisite

3  state of mind for a medical claim is "deliberate indifference."  <u>Hudson v. McMillian</u>, 503 U.S. 1,

4  5 (1992).

5          A serious medical need exists if the failure to treat a prisoner's condition could

6  result in further significant injury or the unnecessary and wanton infliction of pain.  Indications

7  that a prisoner has a serious need for medical treatment are the following:  the existence of an

8  injury that a reasonable doctor or patient would find important and worthy of comment or

9  treatment; the presence of a medical condition that significantly affects an individual's daily

10  activities; or the existence of chronic and substantial pain.  <u>See</u>, <u>e.g.</u>, <u>Wood v. Housewright</u>, 900

11  F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); <u>Hunt v. Dental Dept</u>., 865 F.2d 198, 200-01

12  (9th Cir. 1989).  <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059-60 (9th Cir. 1992), <u>overruled</u> <u>on</u> <u>other</u>

13  <u>grounds</u>, <u>WMX Technologies v. Miller</u>, 104 F.3d 1133 (9th Cir. 1997) (en banc).

14          In <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994), the Supreme Court established a very

15  demanding standard for "deliberate indifference."  Negligence is insufficient.  <u>Farmer</u>, 511 U.S.

16  at 835.  Even civil recklessness (failure to act in the face of an unjustifiably high risk of harm

17  which is so obvious that it should be known) is insufficient to establish an Eighth Amendment

18  violation.  <u>Id.</u> at 836-37.  It not enough that a reasonable person would have known of the risk or

19  that a defendant should have known of the risk.  <u>Id.</u> at 842.  Rather, deliberate indifference is

20  established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to

21  inmate health and safety."  <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1057 (9th Cir. 2004) (internal

22  citation omitted) (emphasis added).

23          A physician need not fail to treat an inmate altogether in order to violate that

24  inmate's Eighth Amendment rights.  <u>Ortiz v. City of Imperial</u>, 884 F.2d 1312, 1314 (9th Cir.

25  1989).  A failure to *competently* treat a serious medical condition, even if some treatment is

26  prescribed, may constitute deliberate indifference in a particular case.  <u>Id.</u>  However, mere

8

1  differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth

2  Amendment violation.  Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996); Franklin v. Oregon,

3  662 F.2d 1337, 1344 (9th Cir. 1981).  In cases involving complex medical issues where plaintiff

4  contests the type of treatment he received, expert opinion will almost always be necessary to

5  establish the necessary level of deliberate indifference.  Hutchinson v. United States, 838 F.2d

6  390 (9th Cir. 1988).

7       A finding that an inmate was seriously harmed by the defendant's action or

8  inaction tends to provide additional support for a claim of deliberate indifference; however, it

9  does not end the inquiry.  McGuckin, 974 F.2d 1050, 1060 (9th Cir. 1992).  In summary, "the

10  more serious the medical needs of the prisoner, and the more unwarranted the defendant's actions

11  in light of those needs, the more likely it is that a plaintiff has established deliberate indifference

12  on the part of the defendant."  McGuckin, 974 F.2d at 1061.

13       Plaintiff's repeated allegations that the defendants acted negligently fail to state an

14  Eight Amendment claim.  Farmer, 511 U.S. at 835.  In detailing the course of his illness and

15  treatment, plaintiff fails to allege specific facts which would demonstrate that the individual

16  defendants subjectively knew of and disregarded an excessive risk to inmate health and safety.

17  See Toguchi, 391 F.3d at 1057.  Professional negligence or medical malpractice is a state law

18  claim, as plaintiff himself recognizes.  ECF No. 1-1, pp. 1-2, citing, inter alia, Cal. Code Civ. P.

19  340.5 ("[a]ction against health care provider . . . .").  Plaintiff may not proceed on the basis of a

20  bare allegation that his Eighth Amendment rights have been violated, without articulating a

21  sufficient factual predicate.  "A pleading that offers 'labels and conclusions" or 'a formulaic

22  recitation of the elements of a cause of action will not do.'"  Iqbal, 556 U.S. at  678, quoting

23  Twombly, 550 U.S. at 555.  Plaintiff's Eighth Amendment claims will be dismissed but plaintiff

24  will be granted leave to amend.

25       Retaliation

26       Plaintiff states no factual basis for his conclusory allegation of retaliation.  In order

9

1    to state a retaliation claim, a plaintiff must plead facts which suggest that retaliation for the

2    exercise of protected conduct was the "substantial" or "motivating" factor behind the defendant's

3    conduct. See Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir. 1989). The

4    plaintiff must also plead facts which suggest an absence of legitimate correctional goals for the

5    conduct he contends was retaliatory. Pratt at 806 (citing Rizzo at 532). Verbal harassment alone

6    is insufficient to state a claim. See Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987).

7    Even threats of bodily injury are insufficient to state a claim, because a mere naked threat is not

8    the equivalent of doing the act itself. See Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987). Mere

9    conclusions of hypothetical retaliation will not suffice, a prisoner must "allege specific facts

10    showing retaliation because of the exercise of the prisoner's constitutional rights." Frazier v.

11    Dubois, 922 F.2d 560, 562 (n. 1) (10th Cir. 1990). The facts set forth in this complaint simply do

12    not support such a claim. This complaint will be dismissed but plaintiff will be granted leave to

13    amend.

14          State Law Claims

15          While this court may exercise its supplemental jurisdiction to consider state law

16    claims, in order to do so it must first have original jurisdiction. 28 U.S.C. § 1367(a)("in any civil

17    action of which the district courts have original jurisdiction, the district courts shall have

18    supplemental jurisdiction over all other claims . . . so related to claims in the action within such

19    original jurisdiction that they form part of the same case or controversy under Article III of the

20    United States Constitution."). As the only claims that remain in this action at this point are state

21    tort claims over which the court does not exercise original jurisdiction, these claims are

22    dismissed, but plaintiff will be granted leave to amend.

23          Amendment

24          If plaintiff chooses to amend the complaint, he must demonstrate how the

25    conditions complained of have resulted in a deprivation of his constitutional rights. See Ellis v.

26    Cassidy, 625 F.2d 227 (9th Cir. 1980). Also, the complaint must allege in specific terms how

1  each named defendant is involved.  There can be no liability under 42 U.S.C. § 1983 unless there

2  is some affirmative link or connection between a defendant's actions and the claimed deprivation.

3  Rizzo v. Goode, 423 U.S. 362, 96 S.Ct. 598 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir.

4  1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  Vague and conclusory allegations of

5  official participation in civil rights violations are not sufficient.  See Ivey v. Board of Regents,

6  673 F.2d 266, 268 (9th Cir. 1982).

7          In addition, plaintiff is informed that the court cannot refer to a prior pleading in

8  order to make plaintiff's amended complaint complete.  Local Rule 220 requires that an amended

9  complaint be complete in itself without reference to any prior pleading.  This is because, as a

10  general rule, an amended complaint supersedes the original complaint.  See Lacey v. Maricopa

11  County, 693 F.3d 896, 927 (9th Cir. 2012) ("the general rule is that an amended complaint

12  supercedes the original complaint and renders it without legal effect. . . .")  Once plaintiff files an

13  amended complaint, the original pleading no longer serves any function in the case.  Therefore, in

14  an amended complaint, as in an original complaint, each claim and the involvement of each

15  defendant must be sufficiently alleged.

16                    Request For Counsel

17          Plaintiff has requested the appointment of counsel.  The United States Supreme

18  Court has ruled that district courts lack authority to require counsel to represent indigent prisoners

19  in § 1983 cases.  Mallard v. United States Dist. Court, 490 U.S. 296, 298 (1989).  In certain

20  exceptional circumstances, the court may request the voluntary assistance of counsel pursuant to

21  28 U.S.C. § 1915(e)(1).  Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991); Wood v.

22  Housewright, 900 F.2d 1332, 1335-36 (9th Cir. 1990).  In the present case, there being no action

23  presently pending before the court by this order the undersigned does not find the required

24  exceptional circumstances.  Plaintiff's motion for the appointment of counsel will therefore be

25  denied without prejudice to renewal at a later stage of the proceedings.

26  ///

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's request for leave to proceed in forma pauperis is granted.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

3. The complaint is dismissed for the reasons discussed above, with leave to file an amended complaint within twenty-eight days from the date of service of this order. Failure to file an amended complaint will result in a recommendation that the action be dismissed.

4. Plaintiff's motion for the appointment of counsel (ECF No. 2) is denied without prejudice.

DATED: January 18, 2013.

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

AC:009
robe2640.b

12